UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

In re:

DARRIN LENALD COOPER,

    Debtor.

Bankr. No. 20-11937-MLB

UNITED STATES' RESPONSE TO DEBTOR'S MOTION FOR AN ORDER TO APPEAR AND SHOW CAUSE

UNITED STATES' RESPONSE TO DEBTOR'S
MOTION FOR AN ORDER TO APPEAR AND SHOW
CAUSE - (B20-11937-MLB)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
206-553-7970

Before filing this case and receiving a Chapter 7 discharge, Debtor Darrin Lenald Cooper (Debtor) received a $73,000 overpayment of Disability Insurance Benefits from the Social Security Administration (the Agency). Debtor acknowledges that the Agency now seeks to "recoup" the prepetition overpayment by adjusting his ongoing stream of disability benefits payments. Equitable recoupment is a well-recognized exception to both the discharge injunction and automatic stay that the Ninth Circuit has applied in closely analogous cases. Nonetheless, Debtor's Motion for an Order to Appear and Show Cause, [dkt. no. 22], completely ignores that precedent and seeks to hold the Agency in contempt for violating the discharge injunction.

The Agency's challenged actions are an authorized recoupment under binding Ninth Circuit precedent because there is a logical relationship between the Debtor's prepetition receipt of a disability benefits overpayment and the Agency's recovery of that overpayment from the same, ongoing stream of monthly disability benefits. As required by the caselaw, there is both a close factual and legal connection between the Agency's right (statutory duty, actually) to recover the overpayment and the Debtor's entitlement to ongoing disability benefits payments. The factual connection is obvious: but for the prior overpayment of benefits, the Agency would not seek to withhold any of the Debtor's ongoing benefits payments. The legal connection is likewise straightforward: when a beneficiary is overpaid, the Social Security Act (the Act) requires the Agency to "decrease any payment under [the Act's retirement and disability provisions] to which such overpaid person is entitled . . ." unless full recovery is made by other means. 42 U.S.C. § 404(a)(1))(A). In other words, a beneficiary's legal entitlement to ongoing disability benefits depends on whether the beneficiary received any unrecovered benefits overpayments.

Finally, the equities favor the Agency's ability to recoup the overpayment. Basic fairness dictates that the Debtor should not be allowed to continue receiving unreduced Social Security

UNITED STATES' RESPONSE TO DEBTOR'S MOTION
FOR AN ORDER TO APPEAR AND SHOW CAUSE - 1
(B20-11937-MLB)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
206-553-7970

disability payments while he retains a $73,000 overpayment of those same benefits. Nothing justifies such a windfall to the Debtor when the errant payment can be readily recouped from his ongoing stream of monthly benefits.

## **LEGAL BACKGROUND**

**Title II Social Security Benefits**

The Social Security Act (Act) provides a complex but unified framework for the continuous relationship between individuals who hold Social Security numbers and the Agency from the time a person gets his Social Security number until death. *See* 42 U.S.C. § 401 *et seq*. Title II of the Act provides for retirement and disability benefits to individuals who have earned coverage by working. *See* 42 U.S.C. § 401 *et seq*.

For Title II retirement and disability benefits determinations, there are two important steps: (1) eligibility for benefits and (2) determination of the benefit amount. The Agency first determines whether an individual has earned enough Social Security "credits" (sometimes called "quarters of coverage") to make the individual eligible for benefits. *See* 20 C.F.R. § 404.101. If eligible, the Agency then calculates the monthly benefit amount, based on multiple factors, including the person's prior earnings and past Title II benefits received. *See* 20 C.F.R. § 404.201. Understanding eligibility under Title II of the Act requires discussion of the interrelated provisions for both retirement and disability eligibility.

        A.    <u>Retirement Eligibility</u>.

To be eligible for Title II retirement benefits, a person must be at least 62 years old and earn 40 Social Security credits before applying for retirement benefits. *See* 20 C.F.R. § 404.110. A person earns Social Security credits based on his or her earnings. *See* SSA Publication No. 05-10072, *available at* https://www.ssa.gov/pubs/EN-05-10072.pdf (last visited Mar. 14, 2023). For

UNITED STATES' RESPONSE TO DEBTOR'S MOTION
FOR AN ORDER TO APPEAR AND SHOW CAUSE - 2
(B20-11937-MLB)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
206-553-7970

example, in 2023, a person receives one credit for each $1,640 of earnings, up to the maximum of four credits per year. *Id*. Thus, to be eligible for Title II retirement benefits, an individual needs to work at least 10 years to earn the 40 credits needed.

      B.      <u>Disability Eligibility</u>.

Eligibility for Title II disability benefits is more complicated because, in addition to meeting the relevant legal definition of "disabled,"[1] an individual must be "fully insured" and have earned enough credits in the immediately preceding years to be eligible. Generally, to be fully insured, an individual must have at least one credit per year for every year since turning 22 years old. *See* 20 C.F.R. §§ 404.110, 404.132. In addition to being fully insured, the individual must have 20 credits for the previous 40 calendar quarters (20/40 Rule) to be eligible for Title II disability benefits. *See* 20 C.F.R. § 404.130. Because some individuals may be too young to satisfy the 20/40 Rule, there are special rules to satisfy the 20/40 Rule requirement for individuals who are 31 years old or younger and another set of special rules for individuals who are 24 years old or younger. *Id.*

      C.      <u>Calculating Benefits</u>.

Like the criteria for eligibility, calculation of an individual's monthly benefits requires looking back at past earnings and work history. In general, the monthly benefit is a percentage of an individual's average monthly earnings over a certain number of years.

      1.   *Calculating Retirement Benefits*.

With nuances and variations not relevant here, the Agency generally calculates Title II retirement benefits based on an individual's highest 35 years of earnings, adjusted for wage inflation. *See* SSA Publication No. 05-10070 (Jan. 2022), *available at*: https://www.ssa.gov/pubs/EN-05-

---

[1] *See* 20 C.F.R. §§ 404.1505 and 404.1520.

UNITED STATES' RESPONSE TO DEBTOR'S MOTION
FOR AN ORDER TO APPEAR AND SHOW CAUSE - 3
(B20-11937-MLB)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
206-553-7970

10070.pdf (last visited Mar. 15, 2023). The Agency then applies a formula to the individual's adjusted average earnings to arrive at the monthly retirement benefit amount. *Id.*

2. *Calculating Disability Benefits*.

The Agency calculates Title II disability benefits similarly to retirement benefits, but uses various numbers of years of earnings history, depending on the circumstances. The number of years used to calculate disability benefits varies based on factors including the individual's age and the age he or she became disabled. *See* 20 C.F.R. § 404.211(e). After determining the number of years to use, the Agency calculates Title II disability benefits the same way it calculates Title II retirement benefits. *See* 20 C.F.R. § 404.212. When an individual has received Title II disability benefits in the past and becomes eligible for disability benefits again, the Agency may apply the standard disability benefits calculation. Or the Agency may determine benefits based on factors that include the duration of the individual's prior disability and amount of prior benefits. *See* 20 C.F.R. §§ 404.250, 404.251, 404.252.

3. *Adjustment of Disability Benefits for Individuals Who Also Receive Workers' Compensation*

To prevent a windfall to individuals who receive disability insurance benefits and workers' compensation benefits, the Act requires the Agency to reduce the amount of the disability insurance benefits to a workers' compensation recipient pursuant to a statutory formula. See 42 U.S.C. § 424a(a)(2)(B) (hanging paragraph); 20 C.F.R. § 404.408. The Agency must reduce the workers' compensation recipient's disability insurance benefits by the amount that the combined benefits (i.e., workers' compensation and disability insurance) exceed 80 percent of the recipient's "average current earnings." See 42 U.S.C. § 424a(a)(5) ("average current earnings" is defined in the hanging paragraph after § 424a(a)(8)). Explained another way, if the combined amount of the workers'

UNITED STATES' RESPONSE TO DEBTOR'S MOTION
FOR AN ORDER TO APPEAR AND SHOW CAUSE - 4
(B20-11937-MLB)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
206-553-7970

compensation benefits and Social Security disability insurance benefits is more than 80 percent of what the workers' compensation recipient was making before his disability, then the Agency must reduce his disability insurance benefits so that he is not receiving more than 80 percent of his prior income. 42 U.S.C. § 424a(a)(5).

### D. Statutory Authorization for Recoupment.

When the Agency determines that an individual is eligible for retirement or disability benefits, the Agency must award benefits. *See* 42 U.S.C. §§ 402 (retirement benefits), 423 (disability benefits). Conversely, the Agency must also recover overpayments of benefits from individuals who receive more than the correct amount of benefits. 42 U.S.C. § 404. Unless the overpayment debt is otherwise satisfied, the Act directs that the Agency "**shall** decrease any payment" that the individual is entitled to under Title II of the Act. *See* 42 U.S.C. § 404(a)(1)(A) (emphasis added).

### E. Benefits Calculations Based on Complete History.

In sum, the Agency's calculation of an individual's monthly benefits must consider the individual's earned Social Security credits, past covered earnings (and taxes paid), any past periods of disability, and the Agency's entire history of benefit payments to the individual—including any overpayments of benefits. If any of those factors changes, the individual's eligibility for benefits could be lost or the amount of benefits owed each month could change.

## FACTUAL BACKGROUND

In 2017, Debtor applied for Social Security Disability Insurance Benefits (DIB) and Supplemental Security Insurance (SSI) under Titles II and XVI of the Act. Declaration of Christy Holmes ¶ 2. Debtor stated in his application that he had also applied for workers' compensation but was not receiving benefits at that time. *Id.*, Exh. A thereto at 1 (DIB Application Summary). An
UNITED STATES' RESPONSE TO DEBTOR'S MOTION
FOR AN ORDER TO APPEAR AND SHOW CAUSE - 5
(B20-11937-MLB)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
206-553-7970

administrative law judge (ALJ) approved the Debtor's DIB application on April 30, 2019. Holmes Decl., Exh. B thereto (ALJ Decision). The ALJ also found the Debtor disabled for purposes of SSI, and informed him that the Agency's component responsible for authorizing SSI benefits would review whether he met the non-disability requirements to receive SSI benefits. Exh. B at 6.

The Agency sent the Debtor a Notice of Award dated May 10, 2019, informing him that he was entitled to disability benefits beginning May 2016 (retroactively). Holmes Decl. ¶ 4, Exh. C thereto. The Notice of Award stated that Debtor was entitled to receive a total DIB benefit of $2,006.00 in May 2016, less any deductions like Medicare premiums. *Id*., Exh. C at 2. The Notice stated, however, that the Agency would hold the Debtor's DIB benefits for May 2016 through April 2019, pending its determination whether those benefits must be reduced due to the Debtor's receipt of SSI benefits, if any. Exh. C at 2. The Agency advised the Debtor that it would "send [him] another letter" after it "decide[d] how much [he was] due for" May 2016 through April 2019. *Id.*

Of particular importance here, the Notice of Award also informed the Debtor that if he received workers' compensation benefit payments, the Agency might have to reduce the Social Security benefits Debtor would be entitled to receive. Holmes Decl. ¶ 5, Exh. C at 5. The Debtor was instructed in bold text: "At that time, you may have to pay back any Social Security benefits that you were not due. Please let us know the decision on the claim right away." *Id*.

In August 2019, the Agency notified the Debtor that it determined he did not receive any SSI benefits from May 2016 through April 2019. Holmes Decl. ¶ 6, Exh. D thereto (Notice of Change in Benefits, Aug. 19, 2019.) Thus, the Agency would "refund all of the Social Security money" it previously withheld. Exh. D at 1. In August 2019, the Agency sent Debtor a check for $67,355.50, representing his full DIB benefits for May 2016 through April 2019, less a $6,000 payment to his legal representative. Holmes Decl. ¶ 6, Exh. D at 1.

UNITED STATES' RESPONSE TO DEBTOR'S MOTION
FOR AN ORDER TO APPEAR AND SHOW CAUSE - 6
(B20-11937-MLB)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
206-553-7970

In December 2020, the Debtor informed the Agency that he had been receiving workers' compensation benefits. Holmes Decl. ¶ 7. The Debtor provided this information in response to the Agency's "2nd Request for Evidence," dated November 5, 2020. *Id.*, Exh. E thereto (Debtor's Response). Debtor's Response included notice of his bankruptcy discharge in this case and records showing that he received workers' compensation benefits through the Washington State Department of Labor and Industries (L&I) for a period that included at least February 2016 through November 2020. Holmes Decl. ¶ 7, Exh. E at 5-6, 8-9. Debtor's Response also included a "Notice of Decision" from L&I, explaining that beginning in June 2019, L&I would reduce the Debtor's monthly benefits in light of his receipt of Social Security benefits. Exh. E at 7.

In October 2022, the Agency notified the Debtor that because of his receipt of workers' compensation payments from May 2016 through May 2019, *i.e.*, the period during which he received both DIB benefits and unreduced workers' compensation benefits, the Agency overpaid him by $73,112.90. Holmes Decl. ¶ 9, Exh. F thereto (Notice of Change in Benefits, Oct. 30, 2022). The Agency's notice explained that it would recoup the overpayment by "holding back your benefits until we recover the overpayment," starting in January 2023. Exh. F at 2. The notice also advised the Debtor that he could ask the Agency to hold back less than his full monthly benefit, based on his financial needs, and that he had the right to appeal the Agency's decision regarding the overpayment. *Id.* at 2-3. The Agency recouped $2,498.90 from the Debtor's December 2022 monthly benefit, which reduced the current overpayment balance to $70,614.00. Holmes Decl. ¶ 10. After the Agency learned of the Debtor's pending Motion for an Order to Appear and Show Cause, the Agency suspended further recoupment of the overpayment pending the resolution of this matter. Holmes Decl. ¶ 11.

UNITED STATES' RESPONSE TO DEBTOR'S MOTION
FOR AN ORDER TO APPEAR AND SHOW CAUSE - 7
(B20-11937-MLB)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
206-553-7970

# ARGUMENT

## I. Equitable recoupment allows the Agency to recoup its overpayment to the Debtor without regard to the discharge injunction or automatic stay.

Recoupment is an equitable doctrine in bankruptcy that permits one party to recover an obligation from a second party because the second party owes a countervailing obligation to the first party, so long as both obligations arise out of the same "transaction or occurrence." *Gardens Reg. Hosp. & Med. Ctr., Inc. v. California (In re Gardens Reg. Hosp. & Med. Ctr., Inc.)*, 975 F.3d 926, 934 (9th Cir. 2020) (quoting *Sims v. U.S. Dept. of Health & Human Servs. (In re TLC Hosps., Inc.)*, 224 F.3d 1008, 1011 (9th Cir. 2000)). Recoupment functions defensively, as a creditor's right to reduce a debtor's claim against it, and so "'does not involve establishing the existence of independent obligations.'" *Gardens Reg. Hosp.*, 975 F.3d at 933 (quoting 5 *Collier on Bankruptcy* ¶ 553.10 (Richard Levin & Henry J. Sommer, eds., 16th ed. 2019) (emphases omitted)). As such, unlike setoff, recoupment is not subject to the limitations of the automatic stay under 11 U.S.C. §§ 362 and 553. *Gardens Reg. Hosp.*, 975 F.3d at 933-34. Rather, "recoupment is not limited to pre-petition claims and thus may be employed to recover across the petition date." *Sims*, 224 F.3d at 1011. Nor is recoupment limited by the discharge injunction under 11 U.S.C. § 524(a). *Aetna U.S. Healthcare, Inc. v. Madigan (In re Madigan)*, 270 B.R. 749, 754 (9th Cir. BAP 2001) (citing *Sims*, 224 F.3d 1011 and *Newberry Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1399-1400 (9th Cir. 1996)). *See also Beaumont v. Dept. of Veterans Affairs (In re Beaumont)*, 586 F.3d 776, 781 (10th Cir. 2009) (if recoupment applies, no violation of automatic stay or discharge injunction).

The Ninth Circuit determines whether parties' countervailing obligations arise from the same transaction or occurrence via a "logical relationship" test. *Gardens Reg. Hosp.*, 975 F.3d at 934.

UNITED STATES' RESPONSE TO DEBTOR'S MOTION
FOR AN ORDER TO APPEAR AND SHOW CAUSE - 8
(B20-11937-MLB)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
206-553-7970

Whether the obligations are logically related depends not on their temporal proximity but on whether they bear a close factual and legal connection. *Id*. at 936.

In *Sims,* the court applied equitable recoupment to permit the Government to recover a prepetition Medicare overpayment to a debtor hospital by reducing Medicare payments to the hospital for subsequent, postpetition years. *Sims*, 224 F.3d at 1011-12. The court placed great importance on Medicare's statutory payment scheme. In particular, the Medicare statute requires accelerated, estimated payments to the hospital. *Id*. at 1011 (citing 42 U.S.C. § 1395g). Any resulting over- or underpayments are later accounted for and balanced out by adjusting Medicare's payments to the hospital for a subsequent year. *Id*. at 1012; 42 U.S.C. § 1395g(a). The court concluded that "under this specialized and continuous system of estimated payments and subsequent adjustments, [the Government's] overpayments and its underpayments in a subsequent fiscal year were parts of the same transaction for purposes of recoupment." *Sims*, 224 F.3d at 1012.

The *Sims* court noted that it was following the D.C. Circuit's lead on this issue, and expressly adopted that court's reasoning, quoting:

> [T]he key to us is the Medicare statute. Since it requires the Secretary to take into account pre-petition overpayments in order to calculate a post-petition claim . . . Congress rather clearly indicated that it wanted a provider's stream of services to be considered one transaction for purposes of any claim the government would have against the provider.

*Sims*, 224 F.3d at 1013 (quoting *United States v. Consumer Health Servs. of Am., Inc.*, 108 F.3d 390, 395 (D.C. Cir. 1997)).

    A.  <u>The Debtor's receipt of the prepetition overpayment and the Agency's adjustment of his ongoing stream of monthly disability benefits are part of the same transaction.</u>

Like the Medicare statute that the Ninth and D.C. Circuits found to support equitable recoupment in *Sims* and *Consumer Health*, the Act similarly compels the Agency to account for

UNITED STATES' RESPONSE TO DEBTOR'S MOTION
FOR AN ORDER TO APPEAR AND SHOW CAUSE - 9
(B20-11937-MLB)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
206-553-7970

prior overpayments when determining a person's entitlement to ongoing Social Security benefits. 42 U.S.C. § 404(a)(1)(A) (benefits "shall" be decreased to account for overpayments). Indeed, the facts of the present case fit seamlessly into the logical pattern expressed by the D.C. Circuit in *Consumer Health* and adopted by the Ninth Circuit in *Sims*, as follows:

> [T]he key to us is the **Social Security Act**. Since it requires the **Commissioner** to take into account pre-petition overpayments in order to calculate a post-petition **entitlement to benefit payments** . . . Congress rather clearly indicated that it wanted **Social Security benefits paid to an individual** to be considered one transaction for purposes of any claim the government would have against the **individual**.

As detailed in the "Legal Background" section above, even when overpayments are not involved, the Agency determines eligibility and calculates benefits based on series of interrelated factors including an individual's earned Social Security credits, past covered earnings (and taxes paid), any past periods of disability, age, and the Agency's entire history of benefit payments to the individual. The Act's provisions and implementing regulations make current entitlement to benefits payments dependent on an individual's lifelong history with the Agency. For example, the Debtor would not be eligible for DIB disability benefits unless he had earned enough Social Security credits through prior employment and payment of payroll taxes to be "fully insured." *See* 20 C.F.R. §§ 404.110, 404.132. The connection between the Debtor's prepetition history with the Agency cannot be severed from his entitlement to ongoing benefits payments. The entire relationship between the Debtor's work history, earnings, age, and disability, and his right to receive current benefits forms one overarching transaction—one with a "logical relationship"—for purposes of recoupment. *Gardens Reg. Hosp.*, 975 F.3d at 935; *Sims*, 224 F.3d at 1012-13.

Focusing more narrowly on the Agency's overpayment to the Debtor and its subsequent efforts to recoup that amount makes the "logical relationship" even clearer. The Ninth Circuit looks

UNITED STATES' RESPONSE TO DEBTOR'S MOTION
FOR AN ORDER TO APPEAR AND SHOW CAUSE - 10
(B20-11937-MLB)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
206-553-7970

for both a factual and legal connection between countervailing obligations to determine if they are logically related for purposes of recoupment. *Gardens Reg. Hosp.*, 975 F.3d at 936-37. These connections are both readily apparent here. The factual connection is obvious. The $73,000 overpayment of disability benefits is the "but for" cause of the Agency's adjustment of the Debtor's ongoing stream of those same disability benefits payments. The legal connection is equally clear. The Act expressly requires the Agency to adjust the Debtor's ongoing disability benefits payments to account for his 2019 receipt of the overpayment. 42 U.S.C. § 404(a)(1)(A). Stated another way, to determine the Debtor's current legal entitlement to DIB disability benefits, the Agency must include the unrecovered overpayment in its calculation. *Id.*; 20 C.F.R. § 404.502(a)(1). These strong factual and legal connections between the Agency's and the Debtor's countervailing obligations make recoupment applicable. *Gardens Reg. Hosp.*, 975 F.3d at 937.[2]

        B. <u>It would be inequitable for the Debtor to retain his windfall overpayment.</u>

Finally, the Agency satisfies the equitable requirements for recoupment. *Gardens Reg. Hosp.*, 975 F.3d at 934 (recoupment can apply when it would "be inequitable for the debtor to enjoy the benefits of [the] transaction without meeting its obligations.") (internal quotation marks and citation omitted). It would be unjust to permit the Debtor to receive a $73,000 overpayment of disability benefits, discharge his debts in bankruptcy, then continue to receive unreduced monthly

---

[2] Numerous decisions have applied recoupment to analogous facts: *In re Holyoke Nursing Home, Inc.*, 372 F.3d 1 (1st Cir. 2004) (permitting recoupment of prepetition Medicare overpayments from postpetition Medicare amounts due); *Beaumont*, 586 F.3d at 780-82 (VA could recoup prepetition overpayment of veterans benefits from debtor's postpetition benefits); *Williamson v. Pars (In re Williamson)*, 795 F. App'x 537 (9th Cir. 2020) (state can recoup prepetition overpayment of public retirement benefits from postpetition retirement benefits); *In re Gonzales*, 298 B.R. 771 (Bankr. D. Colo. 2003) (city could recoup overpayment of workers' compensation benefits from debtor's postpetition benefits).

UNITED STATES' RESPONSE TO DEBTOR'S MOTION
FOR AN ORDER TO APPEAR AND SHOW CAUSE - 11
(B20-11937-MLB)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
206-553-7970

disability benefits without ever repaying the windfall he received. The Debtor's entitlement to disability benefits is determined under a complex, but unified, statutory scheme that accounts for his entire working history. That history obviously includes both pre- and postpetition periods. Without considering the Debtor's prepetition work and earnings, he would not be entitled to any disability benefit. *See* 20 C.F.R. §§ 404.110, 404.132. It would be inequitable—and unfair to the wage earners who fund Social Security—to allow the Debtor to continue reaping the full benefits of his prepetition work history, while thwarting the Agency from recouping the overpayment from his postpetition, post-discharge benefits. Recoupment remedies this inequity because it is unbound by either the petition or discharge dates.

## **CONCLUSION**

For all the foregoing reasons, the Agency properly invokes equitable recoupment and may recover the overpayment from the Debtor's continuing stream of disability payments, without violating either the discharge injunction or automatic stay.

DATED this 15th day of March 2023.

NICHOLAS W. BROWN
United States Attorney

 *s/Kyle A. Forsyth*
KYLE A. FORSYTH, WSBA #34609
Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101
Phone: 206-553-7970
E-mail: kyle.forsyth@usdoj.gov

UNITED STATES' RESPONSE TO DEBTOR'S MOTION
FOR AN ORDER TO APPEAR AND SHOW CAUSE - 12
(B20-11937-MLB)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
206-553-7970

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Western District of Washington and is a person of such age and discretion as to be competent to serve papers;

It is further certified that on this date, I electronically filed the United States' Response to Debtor's Motion for Order to Appear and Show Cause, the Declaration of Christy Holmes, and Exhibits A-F thereto with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participant(s):

| | |
|---|---|
| Rachel Edmiston | redmiston@curtislaw-pllc.com |
| Michael P Klein | trusteeklein@hotmail.com |
| James K Miersma | bknotice@mccarthyholthus.com |
| Jeremiah Styles | Jeremiah@styles-law.com |
| United States Trustee | USTPRegion18.SE.ECF@usdoj.gov |

I further certify that on this date, I mailed by United States Postal Service the foregoing document to the following non-CM/ECF participant(s)/CM/ECF participant(s), addressed as follows:

-0-

DATED this 15th day of March 2023.

*s/ Crissy Leininger*
CRISSY LEININGER
Paralegal Specialist
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: 206-553-7970
Email: christine.leininger@usdoj.gov

UNITED STATES' RESPONSE TO DEBTOR'S MOTION
FOR AN ORDER TO APPEAR AND SHOW CAUSE - 13
(B20-11937-MLB)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
206-553-7970